Nash, O. J.
 

 The doctrine of contempt is regulated in this' State by statute. Before the year 1846, they were undefined, and left very much to the discretion of the court' presiding. Under such circumstances, it is not at all to be wondered at, that many acts were considered as contempt, and punished as such, which, in the eyes of the public, were looked upon as harmless in themselves, but as exhibiting an arbitrary spirit in judicial officers. The necessity of this power, however, is felt and acknowledged by every one, who values the independence of the judiciary, or its wholesome action. If it were not in the power of the court to punish individuals, who, by noise or otherwise, interrupt its proceedings, its business would be impeded — the majesty of the law defied, and the court ultimately brought into contempt. Needful, then, as the power to punish for contempt is, to every court, mixed up as it is in its very being, it is proper and right that the courts should have, as far as possible, some sure guide to regulate their course. No well-minded judge desires to be burthened with discretionary powers: at least, no further than is necessary to the proper transaction of the business before him. In the year 1846, the Legislature of the State turned its attention to the subject, and defined the limit within which the power to punish for contempts should be exercised by courts of justice. In the 1st sec. of the 62 ch. it is enacted that “ The power of the courts to inflict summary punishment for contempt of court, shall not, hereafter, extend to any causes except the misbehavior of any person or persons in the presence of the said court, or so near thereto, as to obstruct the administration of justice, the misbehavior of any of the officers of said court, in their official transactions, and the disobedience, or resistance by any officer of the said court, party, or juror, witness, or any other person or persons, to any lawful writ, process, order, decree or command of the said court.”' In the case before us, a judgment had been obtained by the plaintiff
 
 *348
 
 Weaver, before the defendant, who is a Justice of the Peace of Rutherford county, from which the defendant in the judgment prayed an appeal to the next term of the Superior Court, and entered into bond with sureties according to law. The appeal was-not returned to Court, and a notice was regularly served on the defendant, to show cause why he did not return it, and also to show cause why he should not be held in contempt for refusing and neglecting to make return as required by law. In his return, the defendant states that a judgment tp the use of Weaver was obtained before him against one Dobson, who being dissatisfied, prayed an appeal to the Superior Court of the county and gave three sureties, who, together with Dobson, executed an appeal bond. The return then states that the defendant being satisfied by the representation of the sureties, that they executed the said bond under a mistake, erased their names from it, fully believing he had a right to do so; and believing, that the defendant Dobson had not complied with the law, in giving bond and security thereto for his appeal, he considered the appeal incomplete, and that he had no riirht to return it to Court.
 

 It will be readily perceived that the cause or foundation for the charge against the defendant, here, for contempt, does not come within any of the classes enumerated in the Act of 1846. The act complained of was not committed in the presence of the Court, or near thereto: the’ defendant is not an officer of the Court, nor has he refused obedience to any lawful writ, process, order, decree, or command of the Superior Court of Rutherford, where he was held in contempt. It is true, that the magistrate strangely mistook his duty, in striking from the appeal bond the names of the sureties. The bond was an official one, in his custody, as an officer of the law, and he had, after it was duly executed, no more power to alter it, than he had to alter or erase the judgment, or to erase any private bond which had been entrusted to his custody by the owner of it. The present plaintiff had acquired, by its execution, an interest in it, of which the defendant could not, by his officious and unauthorized alteration of it, deprive him. After the erasure
 
 *349
 
 by the defendant, it still remained an appeal bond, and the papers ought to have been returned by him to the Court: the violence, perpetrated by him upon the official papers in his hands, was a misdemeanor, and may, under circumstances, be punished by indictment, but not as a contempt. The case was likened at the bar, to that of a sheriff, who, having collected money under an execution, fails, or refuses to pay it into the office of the court: in such a case the officer has violated his precept, which commands him to return it to the clerk of the court, one of the classes enumerated in the Act of 1846.
 

 On behalf of the plaintiff, and in support of the allegation of the existence of the contempt, it is insisted that the plaintiff could not support an application for a
 
 recordari,
 
 for an appeal had been prayed for and granted. So far as enforcing the claim against Dobson and his sureties, was in question, the proper course was pursued by serving a notice upon the defendant to return the papers. His Honor considered the conduct of the defendant to amount to a contempt of court, and that the costs of the proceeding were a sufficient punishment. As there was no contempt of court, the defendant, under the general law regulating costs, was entitled to his costs.
 

 Pee CueiaM.' Judgment reversed and" judgment for the defendant for costs.